**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | |
|---|---|
| **EMMERICH NEWSPAPERS, INCORPORATED** | **PLAINTIFF** |
| **V.** | **CIVIL ACTION NO. 3:21-CV-32 KHJ-MTP** |
| **PARTICLE MEDIA, INC. D/B/A NEWS BREAK and JOHN DOES 1-10** | **DEFENDANT** |

---

**PARTICLE MEDIA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON FAIR USE**

---

Because Defendant Particle Media, Inc. ("Particle Media") made fair use of certain limited portions of Plaintiff Emmerich Newspapers, Incorporated's registered works on the NewsBreak news feed, it "is not an infringer of the copyright[s] with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984).

All four of the statutory fair use factors favor Particle Media. *First*, its use of Plaintiff's works on its news feed was transformative, as it served a new purpose and provided a public benefit. *Second*, the works at issue are factual in nature and thus entitled to narrower protection than are fictional or creative works. *Third*, a comparison of the news feed snippets to the full-text articles at issue shows that the quantity and quality of the material used was reasonable in relation to Particle Media's purpose, as the snippets did not use the heart of the articles or the part most likely to be newsworthy and would not fulfill demand for the original. *Finally*, the news feed did not usurp or substitute for the market for the originals, but rather directed users to Plaintiff's websites. Accordingly, Particle Media is entitled to summary judgment on fair use as to its use of limited portions of the nine registered works on the news feed.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. NewsBreak

Particle Media designed and developed NewsBreak, a website and application ("app") that provides users with, among other things, a personalized feed of content and information, including local, state-wide, national, and international news and a forum to engage with such content, and provides publishers with tools and platforms to manage the content and connect with users. *See* Ex. 1, Mazzola Declaration at ¶3. NewsBreak indexes and links original and third-party news content, making it easier for users to search, browse, and find content of interest and widening publishers' exposure to a broader network of readers. *Id*. Put simply, NewsBreak helps users discover content without having to undertake voluminous searches by pushing content to the users based on their indicated preferences and interests. *Id*.

During the period relevant to this lawsuit, users who opened NewsBreak saw a news feed that, for each listed story, presented a headline and/or a thumbnail image and/or the first limited words of the article (sometimes referred to as a "snippet"), all intended to promote the story. *See* Ex. 1, Mazzola Declaration at ¶4. As it exists today, the NewsBreak news feed includes only a headline and/or a thumbnail image. *Id*.[1] When a user clicks on a story listed on the NewsBreak news feed, she views either the full article on NewsBreak, in the case of original content generated by NewsBreak or fully-hosted articles of publishers and creators with whom Particle Media has entered into licensing agreements,[2] or she is taken to the publisher's own website (*i.e.*, the source of the article), with NewsBreak occasionally acting as a web browser. *Id*. at ¶5.

[1] Particle Media stopped using snippets for product design reasons unrelated to the issues in this case. *Id*. at ¶4.

[2] Particle Media has entered into agreements with more than 100 publishers (who operate thousands of websites) allowing Particle Media to display their content in full on NewsBreak. *Id*. at ¶6.

NewsBreak is free to users. *Id*. at ¶7. Ads and sponsored content appear on NewsBreak on the news feed and in relation to the full articles. *Id*.

## II. The Lawsuit

Plaintiff is a privately-owned company that owns and operates companies that in turn publish newspapers in Mississippi, Louisiana, and Arkansas and run associated websites. *See* [Doc. 23] at 3. Stories from some of these publications appeared on the NewsBreak news feed in the form of a headline, a thumbnail image and/or the first limited words of the article. *See* Ex. 1, Mazzola Declaration at ¶8. There was also a period of time during which, in error, articles from Plaintiff and other non-partner publishers were inadvertently available in full on the NewsBreak app on Android devices.[3] *Id*. In those limited instances, users on Android devices were not directed from the news feed to the publishers' websites but rather viewed the full articles within the app. *Id*.

In or around the summer of 2020, Plaintiff learned of Particle Media's use of its content. *See* Ex. 2, Emmerich 30(b)(6) at 53:8-56:21. In August 2020, Plaintiff registered nine articles with the U.S. Copyright Office: (1) "Carroll County School District to start August 13" (TX0008895928; text); (2) "Citizen tip leads to drug arrest" (TX0008893938; text, photograph); (3) "City puts new water billing system to use" (TX0008890616; text); (4) County will pursue more virus aid (TX0008903548; text); (5) "MSU extension collecting unsolicited seed" (TX0008893936; text, photograph); (6) "Pillow grad enjoys job in AC repair" (TX0008890595; text, photograph); (7) "Some school board members waiting to make decision on fall sports vote" (TX0008890631; text); (8) "Uptown mall wants downturn in taxes" (TX0008890620, text); and (9) "Virus hospitalizations down, but cases continue to surge" (TX0008891074, text) (collectively, the "Registered Works"). *See* Ex. 3, Registration Certificates. Each of these articles

[3] The error did not affect iOS devices (i.e., iPhones) or the website.

appeared on both the NewsBreak news feed and, in some instances, in full text on the NewsBreak app. *See* Ex. 1, Mazzola Declaration, at ¶10.

On January 15, 2021, Plaintiff filed this lawsuit against Particle Media alleging copyright infringement, tortious interference with business relationships, civil conspiracy, and unjust enrichment, and seeking compensatory and punitive damages and a preliminary and permanent injunction enjoining Particle Media from infringing its copyrights. *See* [Doc. 1]. Plaintiff filed a First Amended Complaint on September 26, 2021, stating that its allegations of copyright infringement apply to every instance where Particle Media extracted articles, in whole or in part, from Plaintiff's websites and republished them on NewsBreak app, and requesting a ruling that Particle Media infringed Plaintiff's copyrights in various registered and unregistered works. *See* [Doc. 23] at 15, ¶A.

On October 12, 2021, Particle Media filed its Partial Motion to Dismiss Plaintiff's First Amended Complaint as to Plaintiff's Copyright Infringement Claims for Unregistered Works and Plaintiff's State Law Claims, arguing that (1) Plaintiff's claim for copyright infringement should be dismissed to the extent it relates to the alleged infringement of unregistered works, and (2) Plaintiff's state law claims for tortious interference with business relationship, civil conspiracy, unjust enrichment, and punitive damages should be dismissed because they are preempted by federal copyright law. *See* [Doc. 29]. The Court granted the motion on March 21, 2022, holding that all that remains is Plaintiff's copyright infringement claim as to its registered copyrights and its request for injunctive relief. *See* [Doc. 55]. It is undisputed that NewsBreak no longer uses headlines, photographs, or snippets from any of Plaintiff's websites, and Plaintiff has acknowledged there is no current conduct by Particle Media that it is seeking to enjoin. *See* Ex. 2, Emmerich 30(b)(6) at 196:1-6.

Particle Media seeks summary judgment on its fair use defense as to the use of Plaintiff's Registered Works on the NewsBreak news feed. For the reasons discussed below, summary judgment is warranted.

**STANDARD**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the applicable substantive law, 'its resolution could affect the outcome of the action.'" *Patel v. Tex. Tech Univ*., 941 F.3d 743, 747 (5th Cir. 2019) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)). "An issue is 'genuine' if 'the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). This party must present more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones,* 936 F.3d at 321 (quoting *Lawrence v. Fed. Home Loan Mortg. Corp*., 808 F.3d 670, 673 (5th Cir. 2015)). In analyzing a motion for summary judgment, the Court does not "weigh the evidence and determine the truth of the matter," *Klocke v. Watson,* 936 F.3d 240, 246 (5th Cir. 2019) (quoting *Anderson*, 477 U.S. at 249), but only determines whether there is a genuine issue for trial when viewing the evidence in the light most favorable to the party opposing summary judgment. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013).

## ARGUMENTS AND AUTHORITIES

To prove copyright infringement, Plaintiff must prove "(1) ownership of a valid copyright, and (2) copying [by the defendant] of constituent elements of the work that are original." *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004) (quoting *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (alteration in original)). "Copyright ownership is shown by proof of originality and copyrightability in the work as a whole and by compliance with the applicable statutory formalities." *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1340 (5th Cir. 1994) (citation omitted). *See also Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1993). Copyright registration certificates "create only a rebuttable presumption that the copyrights are valid." *Norma Ribbon*, 51 F.3d at 47 (quoting 17 U.S.C. § 410(c)).

As stated above, this case concerns nine articles Plaintiff registered with the U.S. Copyright Office. *See supra* at 1. This motion is about Particle Media's use of limited portions of those works on its news feed. In the registrations, Plaintiff claimed authorship of the text in all of the articles, and also claimed authorship of the photographs used with three articles: "Citizen tip leads to drug arrest," "MSU extension collecting unsolicited seed" and "Pillow grad enjoys job in AC repair." *See* Ex. 3, Registration Certificates 7, 15, 17. Particle Media can rebut the presumption of validity as to the first two Registered Works, as the photograph Plaintiff used with "Citizen tip leads to drug arrest" was a mugshot taken by the Clarksdale Police Department, *see* Ex. 4, CPD Certificate of Authenticity and [Doc. 1-1] at 48-49, and the photograph Plaintiff used with "MSU extension collecting unsolicited seed" was taken by the Washington State Department of Agriculture, *see* Ex. 5, Seed Photograph. Accordingly, Plaintiff cannot establish ownership of valid copyrights as to "Citizen tip leads to drug arrest" and "MSU extension

collecting unsolicited seed," and even if it could, it cannot show copying by Particle Media of constituent elements of the photographs "that are original" to *Plaintiff*. *See Gen. Universal Sys.*, 379 F.3d at 141.

Assuming for the sake of argument that Plaintiff can prove copyright infringement as to the Registered Works, Particle Media is entitled to summary judgment on its fair use defense.

## I. The Court should grant summary judgment in favor of Particle Media on fair use.

"[A]nyone who ... makes a fair use of [a] work is not an infringer of the copyright with respect to such use." *Sony Corp. of Am.*, 464 U.S. at 433. This is because, under Section 107 of the Copyright Act, "the fair use of a copyrighted work ... for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. "[F]air use is an affirmative defense that 'can excuse what would otherwise be an infringing use of copyrighted material.'" *Estate of Barré v. Carter*, 272 F. Supp. 3d 906, 929 (E.D. La. 2017) (quoting *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1238 (11th Cir. 2014)).

"Because the overarching goal of copyright is to stimulate intellectual activity for the public good, courts have long recognized a 'limited privilege in those other than the owner of a copyright to use the copyrighted material in a reasonable manner without the owner's consent.'" *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist*., 27 F.4th 313, 321 (5th Cir. 2022) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994); quoting *Fisher v. Dees*, 794 F.2d 432, 435 (9th Cir. 1986)) (internal citations omitted). "This privilege applies when 'rigid application of the copyright statute' would 'stifle the very creativity' it is meant to foster." *Bell*, 27 F.4th at 321 (quoting *Stewart v. Abend*, 495 U.S. 207, 236 (1990)).

Congress codified the fair-use doctrine in the Copyright Act of 1976 and enumerated four factors courts should consider when applying it: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. "The four factors are not exclusive." *Bell*, 27 F.4th at 321 (citing *Harper & Row Pub., Inc. v. Nation Enters*., 471 U.S. 539, 560 (1985)). "All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. "A fair-use defense can succeed even if one or more factors favor the claimant." *Bell*, 27 F.4th at 321 (citing *Campbell*, 510 U.S. at 578; *Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 409-10 (5th Cir. 2004)). Fair use is a mixed question of law and fact that requires a case-by-case determination as to whether a particular use of a copyrighted work is a fair use. *Campbell*, 510 U.S. at 577; *Harper & Row*, 471 U.S. at 560. Moreover, courts have recognized that it may be resolved on summary judgment. *See, e.g.*, *Castle Rock Entm't v. Carol Publ'g. Grp., Inc.*, 955 F.Supp. 260, 267 (S.D.N.Y. 1997) (Sotomayor, J.), *aff'd Castle Rock Entm't, Inc. v. Carol Publ'g.Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998).

**A. Particle Media's use of Plaintiff's works on the news feed was transformative.**

The Supreme Court has explained the central purpose of the first factor is to determine "whether the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new

work is ‘transformative[.]’” *Campbell*, 510 U.S. at 579 (internal quotations omitted). Here, the first factor, the purpose and character of the use, 17 U.S.C. § 107(1), favors Particle Media.

To be sure, there is no dispute that ads and sponsored content appear on the NewsBreak new feed. *See* Ex. 1, Mazzola Declaration at ¶7. A use's commercial nature "is only one element" of the first factor's inquiry into the purpose and character of a use, however, and is not determinative. *Campbell*, 510 U.S. at 570, 584 (holding that commerciality does not automatically count against a fair use defense, as such a presumption would "swallow nearly all of the illustrative uses" listed in § 107); *see also Triangle Publ'ns, Inc. v. Knight–Ridder Newspapers, Inc.*, 626 F.2d 1171, 1175 (5th Cir. 1980) (holding that the commercial character of an activity is not a dispositive bar to the fair use defense). Because the goal of copyright is generally furthered by the creation of transformative works, such uses "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright … and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Id*. And in this case, the transformative nature of Particle Media's use decreases the significance of the commerciality inquiry. *See Campbell*, 510 U.S. at 579.

Moreover, as courts have recognized, even "exact copies of copyrighted work can be transformative in certain contexts." *Am. Inst. of Physics v. Winstead PC*, 2013 WL 6242843, at *6 (N.D. Tex. Dec. 3, 2013) (citing *A .V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 638 (4th Cir. 2009) (holding a use can be transformative in function or purpose without altering or actually adding to the original work); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (ruling the use of unaltered images in a search index was "highly transformative" because the copied images served the new purpose of creating an electronic

reference tool, which provided a public benefit)). *See also White v. West Pub. Corp.*, 2014 WL 3385480, at *2 (S.D.N.Y. July 11, 2014) (holding that where legal briefs were created for one purpose but then used by the defendants for another – creating an interactive legal research tool – the first factor weighed in favor of fair use).

Such is the case here. NewsBreak is a news aggregator that brings to the surface content from a variety of publishers and sources and makes the links to those publishers and sources available to readers through its search functionality and by performing news searching similar to that offered by other aggregators such as Google News, Apple News, Yahoo! News, FlipBoard, NewsNow, Newsvine, Fark, SmartNews, Feely and others. *See* Ex. 6, Dep. of B. Sell at 46:5-13; Ex. 7, Expert Report of Blake Sell ("Sell Report") at ¶¶12(c) and (e), 18, 23; Ex. 1, Mazzola Declaration at ¶11. Like these other news aggregators, NewsBreak hosts a broad range of general news content that the general public can search and customize to suit their own needs and preferences. Ex. 7, Sell Report at ¶23. It allows customers to quickly discover content from multiple news sources using a single search or through customization of preferences and viewing options, essentially creating personalized news feeds. *Id.* at ¶19. This new form of journalism distribution allows users to have personalized control over their consumption of news and information. *Id.* at ¶20.

When a user launches the NewsBreak app for the first time, NewsBreak determines the user's location and quickly surfaces a news feed of stories relevant to that location, including stories from local publishers, national news organizations, government and official sources, and the public domain. *See* Ex. 7, Sell Report at ¶41. The user's experience is similar to that of using Google News, Apple News or an array of other news aggregators. *Id*. NewsBreak users can also customize their location, follow specific news providers, and choose from among over 120

categories and subcategories of topics, from accidents to pets to religion to women's health. *Id.* at ¶42. Users also have the option of viewing stories from a long list of trending topics and people. *Id.* at ¶43. The overall user interface excels at engaging and providing useful information to the user. *Id.* Acting as a search engine, NewsBreak searches data (such as text or a database) for specified information and surfaces content it has gathered from other sites across the internet based on search criteria and/or category filters set by the user. *Id.* at ¶¶96, 98, 107. Use of the text excerpts allows NewsBreak to serve as an electronic reference tool to connect users to stories corresponding to their preference-based searches. *See* Ex. 1, Mazzola Declaration at ¶10 and Ex. A. As for the thumbnail image used with "Pillow grad enjoys job in AC repair," it too was transformative for the same reasons. *See Perfect 10*, 508 F.3d at 1165 (finding that incorporating entire image into search engine results was highly transformative such that first factor heavily favored fair use because it served purpose of improving access to information on the internet).

Moreover, as a result of the gathering process NewsBreak also drives traffic to the original publishers' websites. *See* Ex. 7, Sell Report at ¶12(d). In fact, NewsBreak is near the top in total traffic referral, along with Twitter, Google, Facebook and Google News. *Id.* at ¶57. The traffic generated by NewsBreak presents an opportunity for news outlets, particularly small publishers, by directing traffic to their websites, often allowing them to reach audiences beyond those they could reach on their own. *Id.* at ¶12(b).

In sum, because Particle Media's use of Plaintiff's works on the NewsBreak news feed was transformative, the first factor weighs in favor of fair use.

### B. <u>The Registered Works are factual in nature.</u>

The second statutory factor is "the nature of the copyrighted work." 17 U.S.C. § 107(2). This factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. "In general, fair use is more likely to be found in factual works than in fictional works." *Bell*, 27 F.4th at 323 (quoting *Abend*, 495 U.S. at 237). "To determine the nature of the work, [courts] consider whether the work has been appropriated for its 'expressive elements,' rather than to disseminate 'the underlying facts.'" *Bell*, 27 F.4th at 323 (quoting *Harper & Row*, 471 U.S. at 563-64).

There can be no dispute that the Registered Works are factual in nature[4] and were used to disseminate the underlying facts. Therefore, the second factor weighs in favor of finding fair use. *See Am. Inst. of Physics*, 2013 WL 6242843, at *9.

[4] "Carrol County School District to start August 13" is about the school district's approval of a delay to the start of school to give the school board time to decide how to handle distance learning and to give parents time to ask question and make decisions about whether their children should attend in person or virtually. *See* Ex. 1, Mazzola Declaration, at Ex. A at 8. "Citizen tip leads to drug arrest" is about the arrest of a woman for felony possession of a controlled substance and other crime-stopping efforts promoted by the city. *Id*. at Ex. A at 3. "City puts new water billing system to use" is about a new billing system for the City of McComb that included text and email reminders, pay through text, automatic payments and online usage reports. *Id*. at Ex. A at 6. "County will pursue more virus aid" is about the types of COVID-19 aid that may be available to Leflore County and other things being considered by the Board of Supervisors. *Id*. at Ex. A at 5. "MSU Extension collecting unsolicited seeds" is about guidance from the Mississippi Commissioner of Agriculture and Commerce regarding unsolicited seeds purportedly sent from foreign countries. *Id*. at Ex. A at 2. "Pillow grad enjoys job in AC repair" is about someone who graduated from a local high school and community college and decided after working in HVAC repair in high school that he wanted to stay in the Delta and do that long term. *Id*. at Ex. A at 9. "Some school board members waiting to make decision on fall sports vote" is about where certain board members seemed to stand on whether fall sports and activities should be shut down and what other school districts have decided. *Id*. at Ex. A at 7. "Uptown mall wants downturn in taxes" is about a tax accessor's valuation of mall property and the property owner's appeal, as well as the tax accessor's valuation of apartments and other general board of supervisors business. *Id*. at Ex. A at 1. And "Virus hospitalizations down, but cases continue to surge" is about COVID-19 tearing through communities and schools even though the hospitalization numbers showed a mild decline. *Id*. at Ex. A at 4.

### C. The quantity and quality of the material used was reasonable in relation to Particle Media's purpose.

The third fair-use factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Courts consider "whether the amount copied is either a quantitatively or qualitatively significant part of the original." *Bell*, 27 F.4th at 324 (citing *Campbell*, 510 U.S. at 586-87). "[T]he extent of permissible copying varies with the purpose and character of the use." *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 613 (2d Cir. 2006) (citing *Campbell*, 510 U.S. at 586-87). In other words, courts consider whether the material used "was reasonable in relation to the purpose of the copying." *Pierson v. DoStuff Media, LLC*, 2019 WL 5595236, at *5 (W.D. Tex. Oct. 29, 2019) (citation and internal quotation marks omitted). *See also White*, 2014 WL 3385480, at *3 ("Although defendants here copied the entirety of [plaintiff's] brief, such copying was necessary to make the briefs comprehensively text searchable."). Here, as discussed below, the amount of Plaintiff's works used in each snippet was both quantitatively reasonable (using between 8 and 15% of the original) and qualitatively reasonable (omitting key elements of the original stories).[5]

---

[5] The situation presented here is distinguishable from that in *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537 (S.D.N.Y. 2013). There, defendant Meltwater, an internet media monitoring service, used a computer program to scrape news articles on the web and, among other things, provide excerpts of those stories, including many AP stories, in reports it sent each weekday to its paying subscribers. In its fair use analysis, the court focused on the fact that Meltwater displayed two excerpts from each article, including a 300-character snippet of the opening text of the article or lede and a 140-character snippet displaying the keyword that the user searched for. *Id.* at 545. In particular, the court found this fact distinguished Meltwater from "search engines," which display "no more than a headline and a snippet of context designed to direct users to the original source." *Id.* at 558-59 (faulting Meltwater for failing to "attempt[] to show that it took no more than necessary to perform as a search engine"). The size and manner of the excerpts used by Meltwater are just two of many things that distinguish NewsBreak from Meltwater. In fact, Particle Media's business model is substantially different than that of Meltwater, which was an expensive subscription service that marketed itself as a news clipping service, not as a publicly available tool to improve access to content across the Internet. *Id.* at 553-54. Unlike NewsBreak, Meltwater was not designed or operated to improve access to the complete, linked news story. *Id.* at 554. NewsBreak is. *See* Ex. 1, Mazzola Declaration, at ¶13.

The "Carrol County School District to start August 13" snippet stated at most: "Parents and students in the Carroll County School District will have another week to prepare and decide whether they want to send their child to school face-to-face or virtually. The school board approved a proposed new calendar presented by Superintenden—." *See* Ex. 1, Mazzola Declaration, at Ex. A at 8.[6] The snippet included approximately 40 words, and the full article included 343 words. *Id.* Key details from the article were not in the snippet, including but not limited to: the specific timeline of key dates; the steps to be taken by the schools, the school board, and parents; how virtual learning will work each day; and how absences are going to be counted. *Id.*

The "Citizen tip leads to drug arrest" snippet stated at most: "A tip phoned into Clarksdale Police has prompted the arrest of a woman on illegal drug charges and authorities are continuing to urge you to help them clean up Clarksdale. Police reports indicate Maruerite Carter, 38, was arrested after a concerned citiz—." *Id*. at Ex. A at 3. The snippet included approximately 42 words, and the full article included 271 words. *Id.* Key details from the article were not in the snippet, including but not limited to: the precise charge against the woman who was arrested; what the concerned citizen reported; the status of the woman's case; and the entire second half of the article regarding taking steps to prevent car burglaries and report suspicious activity. *Id*.

The "City puts new water billing system to use" snippet stated at most: "McComb officials hope a new water bill system that city officials say will drastically improve services

---

[6] The snippets were recreated based on what a user of the website would have viewed, but the snippets on the app were even shorter, as demonstrated by the exhibit to Plaintiff's Complaint which shows the snippet for this article as "Parents and students in the Carroll County School District will have another week to prepare and decide whether they want to send their child…" [Doc. 1-1] at 13. *See also See* Ex. 1, Mazzola Declaration, at Ex. A at ¶14. This is particularly significant as mobile device users currently constitute more than 90% of NewsBreak's average daily users. *See* Ex. 1, Mazzola Declaration, at ¶15; Ex. 7, Sell Report at ¶56.

with multiple new functions. The system came at no cost to the city, and only required the approval of the city board to enter the new contract. The ne—" *Id*. at Ex. A at 6. The snippet included approximately 45 words, and the full article included 354 words. *Id.* Key details from the article were not in the snippet, including but not limited to: the new functions offered by the new system; additional benefits of the new system; and when it will go live. *Id*.

The "County will pursue more virus aid" snippet stated at most: "The Leflore County Board of Supervisors discussed applying for more funding from the Coronavirus Aid, Relief, and Economic Security (CARES) Act as well as from the Federal Emergency Management Agency. Fred Randle, director of the Greenwood-Leflore Emergen—." *Id*. at Ex. A at 5. The snippet included approximately 37 words, and the full article included 297 words. *Id.* Key details from the article were not in the snippet, including but not limited to: the information brought to the board by the director; the deadlines to apply for aid; the expenses reimbursable through the CARES Act and FEMA; other technology that may be purchased; the next steps for funding; and the board's vote regarding employee health insurance. *Id*.

The "MSU Extension collecting unsolicited seeds" snippet stated at most: "Mississippi Commissioner of Agriculture and Commerce Andy Gipson announced that residents receiving unsolicited packages of seeds with addresses alleging they are from China, or any foreign country, can now drop off the seeds at the Mississippi State Univ—." *Id*. at Ex. A at 2. The snippet included approximately 38 words, and the full article included 350 words. *Id.* Key details from the article were not in the snippet, including but not limited to: first and foremost, where people could drop off seeds; the number of reports of unsolicited seeds; the fact that the Commissioner wanted the public to hold on to the mailing label and place the seeds and

packaging in a plastic bag prior to drop off; the fact that investigators are looking into whether the seeds could be a hoax with a political angle; and that recipients should not plant the seeds. *Id*.

The "Pillow grad enjoys job in AC repair" snippet stated at most: "Dylan Foster says once you have lived in the Delta, you don't ever want to leave. 'You're going to want to spend your entire life here,' said the 23-year-old Greenwood resident. Foster, who graduated from Pillow Academy in 2016 and Mississippi Delta Commu—." *Id*. at Ex. A at ¶9. The snippet included approximately 43 words, and the full article included 430 words. *Id.* Key details from the article were not in the snippet, including, but not limited to: Foster's job experience and where he works now; his personal life; and his involvement in the community. *Id*. As to the thumbnail image used with the snippet, this third factor "weighs less when considering a photograph—where all or most of the work often must be used in order to preserve any meaning at all—than a work such as a text or musical composition, where bits and pieces can be excerpted without losing all value." *Katz v. Google Inc.*, 802 F.3d 1178, 1183-84 (11th Cir. 2015) (quotations and citations omitted). It is neutral or supports fair use. *See id*. (finding that the nature of a photo is neutral or supports fair use and that it is necessary to use all of a photo given the nature of the work, as photos cannot really be summarized or excerpted).

The "Some school board members waiting to make decision on fall sports vote" snippet stated at most: "The Greenwood Leflore Consolidated School District's top brass thinks it's best for the safety of all to shut down fall sports and activities for its three high schools. On Tuesday, concerned parents, teachers, coaches and players will find out what the s—." *Id*. at Ex. A at ¶9. The snippet included approximately 42 words, and the full article included 372 words. *Id.* Key details from the article were not in the snippet, including, but not limited to: what school board

members have said about fall sports and activities; what the superintendent said about the issue during a work session the previous week; and what other schools have decided. *Id*.

The "Uptown mall wants downturn in taxes" snippet stated at most: "Edgewood Mall, soon to be known as Uptown McComb, appealed its county tax rates to Pike County supervisors on Monday. Mall representative William Ward claimed the property has a $7.5 million value, half of what's on the county tax roll. He said the proper—." *Id*. at Ex. A at ¶7. The snippet included approximately 44 words, and the full article included 499 words. *Id.* Key details from the article were not in the snippet, including, but not limited to: the history of tax assessments of the property; how the most recent purchaser plans to lease out the space; the tax assessment of a McComb apartment complex; and five other items of business considered by the Pike County Board of Supervisors. *Id*.

And, finally, the "Virus hospitalizations down, but cases continue to surge" snippet stated at most: "Hospitalizations due to COVID-19 are down across the state, health officials identified fewer cases Monday than in recent days and The Claiborne was removed from a state list of long-term care facilities with ongoing coronavirus outbreaks. Despite the mod—." *Id*. at Ex. A at 4. The snippet included approximately 39 words, and the full article included 482 words. *Id.* Key details from the article were not in the snippet, including, but not limited to: the fact that the modest suppression in hospitalizations was good, but that COVID-19 was tearing through the community; details regarding the areas of surges; and descriptions of school outbreaks and scheduling decisions being made by schools. *Id.*

In sum, a fair reading of the full articles shows that the snippets Particle Media used were not the "heart" of the articles or "the part most likely to be newsworthy," and that use of the snippets would not "fulfill[ ] demand for the original." *See Campbell*, 510 U.S. at 590 (quoting 3

M. NIMMER, NIMMER ON COPYRIGHT § 13.05[A][4], p. 13-102.61 (1993)). Moreover, Plaintiff's argument that a reader has no need to click on the link to read an article once he has seen the headline, a picture, and the first few words of the story is disingenuous, because it is contradicted by Plaintiff's own use of Facebook to promote its stories, routinely posting the first couple of sentences in the hope that users will be enticed to click on the link, and by Plaintiff's use of snippets to try to get people to click and subscribe to see what is behind its paywall. *See, e.g.,* Ex. 8, Facebook Example; Ex. 7, Sell Report at ¶92 and Ex. G. Plaintiff's own designated expert, Gregory Griffith, acknowledged that "displaying a brief excerpt falls under fair use." *See* Ex. 9, Griffith Dep. at 54:4-8, 57:2-6.

Because the quantity and quality of the material used on the news feed was reasonable in relation to Particle Media's purpose, the third factor weighs in favor of fair use.

### D. The NewsBreak news feed did not usurp or substitute the market of the original works but rather directed users to Plaintiff's websites.

The fourth factor examines "the effect of the use" on the market for and value of the copyrighted work. 17 U.S.C. § 107(4). The court considers "actual market harm but, more broadly, whether widespread use of the work in the same infringing fashion 'would result in a substantially adverse impact on the potential market' for the original work and any derivatives." *Bell*, 27 F.4th at 324 (citing *Campbell*, 510 U.S. at 590; *Compaq*, 387 F.3d at 410).

When, as here, a defendant's use of the original work was transformative, "market substitution is at least less certain, and market harm may not be so readily inferred." *Campbell*, 510 U.S. at 591; *see also Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1274 n. 28 (11th Cir. 2001) ("Whereas a work that merely supplants or supersedes another is likely to cause a substantially adverse impact on the potential market of the original, a transformative work is less likely to do so.") (internal quotation marks omitted); *Davis v. The Gap, Inc.*, 246 F.3d 152,

175 (2d Cir. 2001) ("The market effect must be evaluated in light of whether the secondary use is transformative").

As discussed in detail above, the snippets did not reproduce such a substantial portion of the Registered Works "as to make available a significantly competing substitute" for the original work. *Bell*, 27 F.4th at 324 (quoting *Author's Guild v. Google, Inc*., 804 F.3d 202, 223 (2nd Cir. 2015)). Rather, the properly attributed use of a short portion from each article offered the opportunity to bolster interest in the original work by serving as free advertising. *See Bell*, 27 F.4th at 324 (quoting *Narell v. Freeman*, 872 F.2d 907, 914 (9th Cir. 1989)). The benefit to Plaintiff, who does not offer a mobile app and many of whose websites have traffic too small to be measured by available web traffic monitoring services, was the NewsBreak's massively trafficked platform and mobile app deliver a large number of new mobile users to Plaintiff's own websites, in addition to Plaintiff's existing users. *See* Ex. 7, Sell Report at ¶¶113-114; Ex. 10, Referral Analytics (showing referrals to the websites on which the Registered Works appeared in July and August 2020).

The NewsBreak news feed did not usurp or substitute for the market of the Registered Works and there was no "substantially adverse impact" on a legitimate market for the works. In fact, the evidence shows that NewsBreak directed new mobile users were directed to Plaintiff's websites. The fourth factor thus weighs in favor of fair use.

## **CONCLUSION**

The statutory factors show that Particle Media's use of portions of the Registered Works on the NewsBreak news feeds was fair use. This conclusion comports with the "ultimate test of fair use": whether copyright law's goal of promoting creativity would be better served by allowing the use than preventing it. *Bell*, 27 F.4th at 325 (citation omitted). Particle Media's

transformative use of the Registered Works has provided a significant benefit to the public and to publishers. For the foregoing reasons, Particle Media is entitled to summary judgment on its fair use defense stemming from alleged copyright infringement related to the NewsBreak news feed. Particle Media requests such other relief as the Court deems just and proper.

Respectfully submitted, this the 3rd day of May, 2022.

Respectfully submitted,
**PARTICLE MEDIA, INC.**

By: s/ *Stephen J. Carmody*
One of its Attorneys

OF COUNSEL:

Stephen J. Carmody, MSB #8345
Karen E. Howell, MSB #102243
BRUNINI, GRANTHAM, GROWER & HEWES, PLLC
Post Office Drawer 119
Jackson, Mississippi 39205
Telephone: (601) 948-3101
Facsimile: (601) 960-6902
scarmody@brunini.com
khowell@brunini.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing with the Clerk of this Court using the ECF system, which sent notification of such filing to all registered users.

Dated: May 3, 2022.

s/ *Stephen J. Carmody*
Stephen J. Carmody