UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION


EMMERICH NEWSPAPERS,                                    PLAINTIFF
INCORPORATED


V.                                    CIVIL ACTION NO.  3:21-CV-32-KHJ-MTP

PARTICLE MEDIA, INC. d/b/a NEWS
BREAK and JOHN DOES 1-10                                DEFENDANTS


ORDER

This action is before the Court on Defendant Particle Media, Inc.'s ("Particle

Media") Motions for Partial Summary Judgment [63], [65] and Plaintiff Emmerich

Newspapers, Inc.'s ("Emmerich") Motion for Partial Summary Judgment [67]. For

the reasons below, the Court denies Particle Media's Motion for Partial Summary

Judgment as to fair use [65], grants in part and denies in part Emmerich's Motion

for Partial Summary Judgment as to fair use [67], and grants Particle Media's

Motion for Partial Summary Judgment as to injunctive relief [63].

I.      Facts and Procedural History

This case is about alleged copyright violations by Defendant Particle Media of

Plaintiff Emmerich's news articles. The facts are largely undisputed. Emmerich is a

Mississippi corporation that owns and publishes many local newspapers in

Mississippi, Louisiana, and Arkansas. Amend. Compl. [23] ¶¶ 5, 11; *see also* Def.'s

Memo Supp. Mot. Summ. J. [66] at 3. Particle Media is a company that developed

and owns an online application called "NewsBreak" which curates personalized

news feeds for its users. *See* Decl. of Robert Mazzola [65-1] ¶ 3. To accomplish this, NewsBreak uses a "web crawler" which searches the internet for popular websites, scans the websites, analyzes them for their content, and saves a portion of that content. Depo. of Particle Media [67-1] at 30–33. The "web crawler" program copies articles' content verbatim. Depo. of Xiliang Zhong [67-3] at 20–21. NewsBreak then indexes the third-party news content, allowing users to search content while "pushing" news stories to users "based on their indicated preferences and interests." [65-1] ¶ 3.

Both Emmerich and Particle Media derive income from online advertisements. NewsBreak is otherwise free for its users. *Id.* ¶ 7. The app generates some revenue by placing ads on individuals' news feeds or by banner ads in fully displayed articles. [67-1] at 99–103. Emmerich similarly markets itself as a provider of local news content through which local businesses can place ads both in print and on Emmerich's news websites. *See, e.g.*, Depo. of Emmerich [67-5] at 44–45, 121.

At all times relevant to this lawsuit, Particle Media collected Emmerich's articles for use in the NewsBreak app. [65-1] ¶ 8. NewsBreak featured about 33,966 of Emmerich's articles. [67-1] at 65–68. The app displayed these articles in two formats. The primary way NewsBreak users encountered Emmerich's articles was through the regular news feed display which contained the headline, a thumbnail image, and a "snippet" with the first words of the article ("Snippet Display"). [65-1] ¶ 4, 8. The Snippet Display contained the lesser of the first 50 words of the article or

20% of the whole article. [67-1] at 81. From there, the user could link to Emmerich's website. *See* [65-1] ¶ 5.

The second type of display involved full-text reproduction of articles occurring only on Android devices. *Id.* ¶ 8. From July to December 2019 and May through December 2020, Particle Media displayed the entirety of around 17,000 Emmerich articles on its website. [67-1] at 52–54, 67. These full-text articles garnered about 1.7 million page views. *Id.* at 74–75. The parties disagree on whether this display was inadvertent or willful. *See id.* at 52–54 (attributing full-text display to an error in NewsBreak's programming); [65-1] ¶ 8 ("This was not how the app was intended to function"); Pl's Memo. Supp. Mot. Summ. J. [68] at 8. But these full-text articles on the NewsBreak app did not have Emmerich's sold web advertisements. [67-3] at 29.

In August 2020, Emmerich registered nine of its articles ("Registered Works") with the United States Copyright Office. *See* Registrations [65-3].[1] At one point, all nine articles were on NewsBreak's news feed, and a number appeared full-text on the app. [65-1] ¶ 10. Emmerich sued in January 2021. Compl. [1]. Remaining before the Court are Emmerich's claims of copyright infringement and its requests for damages and injunctive relief. Now, Particle Media files two Partial Motions for

---

[1] Namely, "Carroll County School District to Start August 13" (TX 8-895-928), "County Will Pursue More Virus Aid" (TX 8-903-548), "Some School Board Members Waiting to Make Decision on Fall Sports Vote" (TX 8-890-631), "Pillow Grad Enjoys Job in AC Repair (TX 8-890-595), "City Puts New Water Bulling System to Use" (TX 8-890-616), "Uptown Mall Wants Downturn in Taxes" (TX 8-890-620), "Virus Hospitalizations Down, But Cases Continue to Surge" (TX 8-891-074), "Citizen Tip Leads to Drug Arrest" (TX 8-893-938), and "MSU Extension Collecting Unsolicited Seed" (TX 8-893-936).

Summary Judgment, seeking judgment on its fair use defense as it relates to the Snippet Displays of the Registered Works and on Emmerich's request for injunctive relief. [65], [63]. Emmerich files a cross-motion, seeking summary judgment on the availability of Particle Media's fair use defense. [67].

## II.   Standard

In reviewing a motion for summary judgment, the Court must determine whether there is a "genuine dispute as to any material fact" and whether "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 628 (5th Cir. 2013) (citation omitted). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment need only show "an absence of evidentiary support in the record" for any issue the non-movant must prove at trial. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (citation omitted). Once the movant meets this requirement, "the burden shifts to the non-movant to produce evidence of the existence of such an issue for trial." *Id.* (citation omitted). The non-movant may rely on depositions, affidavits, or declaration, or other materials to show a genuine issue of fact, Fed. R. Civ. P. 56(c), and must present

more than "speculation, improbable inferences, or unsubstantiated assertions." *Jones*, 936 F.3d at 321 (quoting *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015)). "A failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (citing *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991)).

Where, as here, the parties file cross-motions, they should be considered independently "as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors, Inc. v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004) (citation omitted). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law [on the issue], the court may render summary judgment." *Id.* at 539 (citations omitted).

III.   Analysis

A.  Motions for Partial Summary Judgment on Fair Use [65], [67]

An owner of a copyright is entitled to certain exclusive rights, including the exclusive right to reproduce the copyrighted work, distribute copies, and display the work publicly. *See* 17 U.S.C. § 106. The fair use doctrine acts as an equitable exception to this. *See Google LLC v. Oracle Am., Inc.,* 141 S. Ct. 1183, 1196 (2021). Through the fair use doctrine, courts recognize a "limited privilege in those other than the owner of a copyright to use the copyrighted material in a reasonable

manner without the owner's consent" where "rigid application of the copyright statute would stifle the very creativity it is meant to foster." *Bell v. Eagle Mt. Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 321 (5th Cir. 2022) (cleaned up). Put differently, the fair use doctrine recognizes an "author's consent to a reasonable use of his copyrighted works . . . [implicit in] the constitutional policy of promoting the progress of science and the useful arts." *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 549 (1985) (quoting Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright § 13.05(A)(4) (Matthew Bender rev. ed. 2021)). The Copyright Act ultimately codified the doctrine at 17 U.S.C. § 107. *Id.* at 547.

As an affirmative defense, Particle Media bears the burden of establishing fair use. *Est. of Barré v. Carter*, 272 F. Supp. 3d 906, 929 (E.D. La. 2017) (citing *Harper & Row Publrs.*, 471 U.S. at 546). And as a mixed question of law and fact, the Court should try to break the question into its factual and legal components, reserving underlying disputed questions of fact for a jury. *See Google LLC*, 141 S. Ct. at 1199–200. But where there are undisputed facts, the ultimate legal conclusion to draw from those facts—whether there was fair use—is a question for the judge. *Id.*; *see also, e.g.*, *Reich v. Lancaster*, 55 F.3d 1034, 1044–45 (5th Cir. 1995).

To determine whether a particular use is fair, the Copyright Act lists the following non-exclusive factors,

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;

6

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. The fair use defense requires weighing all the factors on a case-by-case basis and can succeed even if only one factor favors the defendant. *See Bell,* 27 F.4th at 321.

Particle Media moves for summary judgment on the Snippet Displays, arguing that the fair use doctrine protects its use of portions of the Registered Works on news feeds. [65]. Similarly, Emmerich moves for summary judgment arguing that the fair use defense does not allow Particle Media's conduct. [67]. Given that Particle Media displayed the Registered Works in two formats—Snippet Displays and full-text displays—and that Particle Media limits its request for summary judgment to the use of Snippet Displays, the Court will consider each format separately.

     i.  Full-Text Articles

Emmerich moves for summary judgment arguing, in part, that Particle Media's display of the Registered Works in full-text format is not protected by the fair use defense. *See* [68] at 1. Particle Media "does not contend that unintentional uses of full-text articles were within the scope of the fair use defense" and asks the Court to deny the motion as moot. Def.'s Memo Opp. Mot. Summ. J. [70] at 1 n. 1. Because Particle Media raises the fair use defense in its Answer, [9] at 11, and does not affirmatively concede that the Court should find the full-text articles

7

unprotected by the doctrine of fair use, the Court finds the issue is not moot and will briefly address its applicability.

1.  Purpose of Use

The first factor requires the Court to consider the purpose or character of Particle Media's use. 17 U.S.C. § 107(1). Generally, courts look to see how "transformative" the new use is—that is, how much it alters the original with new expression, meaning, purpose, or message rather than merely "superseding" the original work. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578–79 (1994). Courts also consider whether the user stands to profit from the commercial exploitation of the work without paying the customary price and whether the user acted in good faith. *Bell,* 27 F.4th at 321–22 (citations omitted). "[C]riticism, comment, news reporting, teaching[], scholarship, [and] research" are all fair use purposes. *See* 17 U.S.C. § 107.

It is uncontested that Particle Media displayed entire articles within its NewsBreak app for some users. Particle Media's complete republication of Emmerich's work in full-text format with no new purpose is not transformative. Even if inadvertent or in good faith, Particle Media's display of the entire article "obviates any need" to visit Emmerich's site or seek the original work and thus directly supersedes the copyrighted material. *See Midlevelu, Inc. v. ACI Info. Grp.,* 989 F.3d 1205, 1221–22 (11th Cir. 2021) (site's complete republication full-text material, even within a search engine context, is not transformative). This factor weighs strongly against fair use.

2.   Nature of Copyrighted Work

The second factor is the "nature of the copyrighted work." 17 U.S.C. § 107(2).

"[F]air use is more likely to be found in factual works than fictional works." *Compaq*

*Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 410 (5th Cir. 2004) (quoting *Stewart*

*v. Abend*, 495 U.S. 207, 237 (1990)). But even with factual works, the Court

considers whether the defendant's use merely shared facts in the work or

appropriated the original author's expression. *Bell*, 27 F.4th at 323.

While news articles are factual in nature, wholesale copying and

redistribution is not a fair use. *See, e.g.*, *Fox News Network, LLC v. TVEyes, Inc.*,

883 F.3d 169, 178 (2d Cir. 2018) (citing *Authors Guild v. Google, Inc.*, 804 F.3d 202,

220 (2d Cir. 2015). Particle Media indiscriminately included the entire text from the

articles including all Emmerich's expressive components. The Court finds this factor

weighs against fair use.

3.   Amount and Substantiality of Portion Used

The third factor requires the Court to consider "the amount and

substantiality of the portion used in relation to the copyrighted work as a whole." 17

U.S.C. § 107(3). This is both a quantitative and qualitative inquiry. *Bell*, 27 F.4th at

324 (citation omitted). "Even a relatively small amount of copying can weigh against

fair use if it captures 'the heart' of the work." *Id.* (citing *Harper & Row*, 471 U.S. at

565.) Ultimately, the "amount and substantiality" of material used must be

"reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586.

When it posted Emmerich's articles full-text, Particle Media withheld nothing. The entire copyrighted work was available on NewsBreak. Both qualitatively and quantitatively, Particle Media unreasonably reproduced the work. Accordingly, this factor weighs against fair use.

### 4.  Effect on the Market for Copyrighted Work

The fourth factor considers the "effect of the [defendant's] use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor requires the Court to look to both the actual market harm caused by the infringer and "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market" for the copyrighted work. *Campbell*, 510 U.S. at 590 (quoting Nimmer § 13.05[A][4], p. 13-102.61).

Once again, full-text republications of Emmerich's work are substitutive and thus abrogate the need for a market participant to seek the original copyrighted works. Widespread full republication of Emmerich's articles, as with any written copyrighted works, would virtually destroy its market. Emmerich bolsters this conclusion with testimony that online advertising revenue "stabilized," at least in part, after NewsBreak ceased republication of its articles. [67-5] at 184–85. Even if the actual effects were positive—increasing demand for Emmerich's articles—as Particle Media contends, simple copying without more is not fair use. *See Campbell*, 510 U.S. at 590 n. 21.

10

Verbatim copying of articles has potential to interfere with Emmerich's market for online article viewership. *See, e.g., L.A. Times v. Free Republic*, No. CV 98-7840 MMM(AJWX), 2000 WL 565200, at \*21 (C.D. Cal. Apr. 4, 2000). The Court finds this factor weighs against fair use.

The Court finds all factors weigh against fair use. Particle Media's display of the Registered Works in full-text format on the NewsBreak app is not fair use and is unprotected by the affirmative defense codified in § 107. The Court grants Emmerich's Motion for Partial Summary Judgment on the fair use defense as to the full-text republications.

ii.   Snippet Displays

Both Emmerich and Particle Media move for summary judgment on the applicability of the fair use defense to the Snippet Displays. The parties agree that the Snippet Displays contained republications of the registered works' photographs, headline, and up to the first 20% of the article. Pl's Memo. in Opp. [76] at 2. Particle Media argues that the fair use defense applies because, while its use of the registered works was commercial, it added new purpose by serving as a "news aggregator" that ultimately drives traffic to the owner's websites. [66] at 10–11. Particle Media also argues that the works were factual in nature, the Snippet Displays' use were quantitatively and qualitatively reasonable, and the use did not adversely impact Emmerich's market. *Id.* at 12–19. Yet Emmerich points to the commercial nature of NewsBreak's news feed, which generated revenue from ads and allegedly eliminates the need to visit Emmerich's sites. [76] at 4.

To start, whether Particle Media is properly understood to be a "news aggregator" is irrelevant to a fair use determination. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 740 (9th Cir. 2019) ("We consider the reality of what is happening rather than resorting to labels."). Particle Media was engaged in the verbatim reproduction of headlines, title photographs, and snippets of Emmerich's copyrighted articles. These Snippet Displays were shown on custom news feeds, providing NewsBreak users with links to publishers' websites. Emmerich concedes the app has a search function allowing queries within Particle Media's copied database. [76] at 4 (citing [67-3] at 30–31). But at issue is that these searches elicit Snippet Displays.

The Court finds a genuine dispute exists as to whether the fair use doctrine protected Particle Media's use of Snippet Displays. Once again, this determination is a mixed question of fact and law. *See Google LLC*, 141 S. Ct. at 1199–200. While a few undisputed facts exist for the Court to weigh some of the fair use factors, underlying factual disputes remain, preventing full consideration. For example, the parties contest whether the Snippet Displays competed with Emmerich's articles or impacted the copyrighted works' market. *See, e.g.*, [67-5] at 152–53 (advertisers prefer digital ad networks associated with NewsBreak over local advertisements), 184–85 (revenue stabilized after Particle Media ceased republication; Blake Sell Expert Report [65-7] at 31 (NewsBreak can provide more traffic to Emmerich's articles). Whether readers consume the Snippet Displays to replace the full articles is also relevant and contested. *See, e.g.*, Depo. of Blake Sell [67-2] at 60–62

(testifying that some constituencies might just read the headline and the first 50 words and not need the rest of the story); [65-1] ¶ 16 ("NewsBreak drives traffic to the original publishers' websites"). Even Particle Media's ultimate intent with Emmerich's content is at issue. *See, e.g.*, [67-1] at 56–57 (no notice provided to Emmerich of full-text publications); [65-1] ¶ 8 (Particle Media did not intend to publish the copyrighted material).

A fair use determination requires appropriate factual underpinnings. There are still genuine disputes of material fact relevant to the Snippet Displays that preclude the Court from applying the doctrine. Because of this, summary judgment is not proper as to whether the fair use defense protects Particle Media's use of Snippet Displays.

### B.  Motion for Partial Summary Judgment on Injunctive Relief [63]

Particle Media separately moves for summary judgment on Emmerich's request for permanent injunctive relief. [63]. Particle Media contends that, because it no longer posts, copies, or intends to post or copy Emmerich's works, a permanent injunction is not appropriate. Memo Supp. Mot. for Summ. J. on Injunctions [64] at 6; Reply [81]; *see also* Decl. of Mazzola on Injunctive Relief [63-1] ¶9; Reply Decl. of Mazzola [81-1] ¶3. In contrast, Emmerich states that the evidence shows that the infringement was intentional, which provides an inference that a threat of future injury exists. Resp. Memo. on Injunctive Relief [74] at 3–4.

When determining whether the Court should issue a permanent injunction, it must find the following: (1) the plaintiff has suffered (or will suffer) an irreparable

injury, (2) remedies at law are inadequate to compensate for that injury, (3) balancing the hardships between the plaintiff and defendant, a remedy in equity is warranted, and (4) the public interest is not disserved by an injunction. *See Merritt Hawkins & Assocs., LLC v. Gresham*, 861 F.3d 143, 157–58 (5th Cir. 2017) (citations omitted). The plaintiff bears the burden on each element. *See id.* Generally, a permanent prohibitory injunction is only appropriate where "a defendant's past conduct gives rise to an inference that, in light of present circumstances, there is a reasonable likelihood of future transgressions." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021) (quoting *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017)).

The parties contest whether a true threat of irreparable injury exists going forward. It does not. Particle Media's conduct is not indicative that future transgressions are likely. Assuming past infringement was intentional, Particle Media has ceased publishing full-text articles on Android devices, displaying any headlines or hyperlinks to Emmerich's work, and using "snippets" from any publication. *See id.* ¶ 9 (no longer uses headlines, photographs, or snippets from Emmerich); [67-1] at 52 (practice of displaying full-text articles was stopped); [65-1] ¶ 4 (only headlines and images are used). Particle Media no longer associates with any of Emmerich's articles nor supplies "snippets" for any other publishers' articles. Emmerich does not dispute this. Further, Particle Media now acknowledges its error in publication of full-text articles. *See* [70] at 19. While there is a genuine dispute over culpability and state of mind, a defendant's recognition of its wrongful

14

conduct is an often-considered factor when issuing injunctions given past violations. *See, e.g.*, *SEC v. Blatt*, 583 F.2d 1325, 1334 n. 29 (5th Cir. 1978). For these reasons, irreparable injury is unlikely.

Considering the low risk of future infringement, remedies at law are adequate to address present alleged injury. "[S]tatutory damages are intended not only to compensate copyright owners but also to deter copyright infringers." *Energy Intel. Grp., Inc. v. Kayne Anderson Cap. Advisors, L.P.*, 948 F.3d 261, 274 (5th Cir. 2020) (citation omitted). And monetary remedies—i.e., damages—are legal remedies. *See, e.g.*, *Halliburton, Inc. v. Administrative Rev. Bd.*, 771 F.3d 254, 265 n. 9 (5th Cir. 2014) (citing Dan B. Dobbs, Law of Remedies § 1.2 (2d ed. 1993)). Because past copyright infringement is remediable by statutory and other damages which would adequately deter Particle Media and compensate Emmerich, injunctive relief is not proper. *See, e.g.*, *Spiegel v. Houston*, 636 F.2d 997, 1001 (5th Cir. 1981) (citation omitted) (injunctive relief proper only where threat of harm cannot be cured through monetary remedies). Accordingly, the Court grants Particle Media's request for summary judgment [63] and finds Emmerich unentitled to injunctive relief.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the reasons stated, the Court DENIES Particle Media's Motion for Partial Summary Judgment as to fair use [65], GRANTS IN PART AND DENIES IN PART Emmerich's Motion for Partial Summary Judgment as to fair

use [67], and GRANTS Particle Media's Motion for Partial Summary Judgment as to Injunctive Relief [63].

Particle Media is not entitled to a fair use defense as for any full-text republications of Emmerich's articles. The Court further dismisses Emmerich's claims for permanent injunctive relief.

SO ORDERED AND ADJUDGED this the 9th day of August, 2022.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE